# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Michael Stafford,

      Plaintiff

v.

Mandalay Bay, LLC,

      Defendant

Case No.: 2:24-cv-01056-JAD-DJA

**Order Granting Defendant's Motion for
Summary Judgment and Closing Case**

[ECF No. 51]

Mandalay Bay contends that it fired lifeguard Michael Stafford after he accosted a guest at one of its pools.  Stafford alleges his supervisor fabricated that story and that Mandalay Bay really fired him based on his race.  So Stafford sues for racial discrimination and requests $2.4 million in damages, reinstatement, and for Mandalay Bay's parent company to provide him with unlimited stays at any MGM resort.  Mandalay Bay moves for summary judgment, arguing that Stafford cannot show a history of satisfactory work performance or disparate treatment of similarly situated individuals needed to prove discrimination under *McDonnell Douglas Corp. v. Green* or that Mandalay Bay's stated reason for Stafford's termination was pretextual.  Mandalay Bay also contends that Stafford failed to attest to any relevant facts in his response, so no evidence supports his claim.  Because Stafford did not include any relevant evidence or sworn statements to support his claim, he has failed to meet his burden to stave off summary judgment. So I grant Mandalay Bay's motion, enter judgment in its favor, and close this case.

**Background**

Mandalay Bay hired Michael Stafford, a Black man, as a part-time lifeguard.[1]  After an incident at the pool involving a guest, Mandalay Bay suspended Stafford for a month and opened an investigation.[2]  Mandalay Bay appointed its employees, Kathi Konkel and Wyatt Dent, as investigators.[3]  Konkel interviewed Stafford's supervisor, Yaneli Argueta, who stated that the guest complained to her after the incident and said that Stafford was extremely rude to him.[4]  Konkel interviewed two other lifeguards at the scene, each of whom stated that Stafford threatened to fight the guest.[5]  One of those lifeguards reported that Stafford had told the guest, "we told you 30 f—king seconds ago to get the f— out of the pool," "you guys are the only ones still in here while everyone else got out," and "I'll beat [your] a—, you don't want it I promise you that."[6]  The investigation also discovered Stafford's criminal history in Utah that he did not report to Mandalay Bay during his background check.[7]

The investigators then interviewed Stafford, who provided a different account.[8]  He stated that he noticed two guests in the pool: a father and son.[9]  He and four other lifeguards went over to the father, and Stafford told them to get out of the pool.[10]  Stafford offered the boy a

---

[1] ECF No. 51-1 at 3.

[2] *Id.* at 34.

[3] *Id.* at 30.

[4] *Id.* at 34.

[5] *Id.*

[6] *Id.* at 16 (cleaned up).

[7] *Id.* at 34, 68.

[8] *Id.*

[9] *Id.* at 15.

[10] *Id.*

1 life-preserver tube, and the father stated that his son "was fine and not to assist."[11]  The father

2 and son eventually left.[12]  Stafford denied using profanity or threatening to fight.[13]  Konkel's

3 interview notes recount that Stafford stated that he did not know what could be considered

4 profanity, he described himself as "very direct," he claimed that his coworkers are biased

5 because they don't know him, and he suggested that the guest may have been delusional or

6 drunk.[14]  Based on witness testimony, Konkel found that the guest's allegations were

7 substantiated.[15]  The investigation team then agreed to terminate Stafford for violating the

8 company's policies.[16]

9          Stafford sues Mandalay Bay, alleging that it terminated him based on his race in violation

10 of Title VII of the Civil Rights Act.[17]  Mandalay Bay moved to dismiss under Federal Rule of

11 Civil Procedure (FRCP) 12(b)(6), which I initially granted with leave to amend.[18]  But I denied

12 Mandalay Bay's second motion to dismiss after Stafford amended his complaint with more

13 specific allegations.[19]  Mandalay Bay now moves for summary judgment, arguing that Stafford

14

15 [11] *Id.* at 15, 34.

16 [12] *Id.* at 15.  In his amended complaint, Stafford tells a slightly different story.  He alleges that he
    and three other lifeguards of different races saw the son struggling and swam towards him to

17 help him.  ECF No. 40 at 3–5.  The father yelled "Don't save him, don't touch him.  Let him
    swim out."  *Id.*  Stafford and the other lifeguards collectively yelled and waved to the father,

18 forcing him to exit the pool to assist the struggling boy.  *Id.*  Over the father's objections, they
    rescued and guided the son to safety.  *Id.*  Stafford alleges that he told them to get out of the pool

19 but denied using profanity or threatening to fight.  *Id.*

   [13] ECF No. 51-1 at 34.

20 [14] *Id.*

21 [15] *Id.* at 34–35.

   [16] *Id.* at 10, 11, 35.

22 [17] ECF No. 40 at 4.

23 [18] ECF Nos. 17, 38.

   [19] ECF No. 48.

cannot show his work performance was satisfactory, that similarly situated individuals were treated differently, or that Mandalay Bay's stated reason for terminating him is pretextual.[20]  It also argues that the discovery of his conviction in Utah bars rehiring under the after-acquired-evidence doctrine, and that his requested relief—unlimited stays, value membership, and punitive damages—are unfounded or relief that cannot be granted.[21]  Pro se Stafford opposes the motion.[22]

### Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23]  If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[24]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[25]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[26]

---

[20] ECF No. 51 at 11–19.

[21] *Id.* at 14–19.

[22] *See generally* ECF No. 58.

[23] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[24] *Id.* at 323.

[25] *Id.* at 322.

[26] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1    Given that Stafford is an unrepresented litigant, the court must liberally construe his

2    arguments.[27]  But Stafford's unrepresented status does not relieve him of his burden on summary

3    judgment: unrepresented litigants in ordinary civil cases still must strictly comply with the

4    summary judgment rules.[28]  And the court should not inject itself into the adversarial process on

5    behalf of a party.[29]

6    Stafford brings a claim for racial discrimination under Title VII of the Civil Rights Act.[30]

7    Under the *McDonnell Douglas* framework, Stafford must first make out a prima facie case of

8    racial discrimination.[31]  The burden then shifts to Mandalay Bay to show a legitimate,

9    nondiscriminatory reason for terminating him.[32]  If Mandalay Bay does so, Stafford has the

10   burden of showing that the explanation is pretextual.[33]  Summary judgment should be granted if

11   Stafford fails to present evidence establishing either the prima facie case or that the explanation

12   is pretextual.[34]

---

[27] *Ortez v. Wash. Cnty.*, 88 F.3d 804, 807 (9th Cir. 1996); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (unrepresented litigants "must be held to less stringent standards than formal pleadings drafted by lawyers").

[28] *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986) ("[Unrepresented] litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

[29] *Filler*, 790 F.2d at 1365.

[30] *See* ECF No. 40 at 4.

[31] *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[32] *Id.* at 641.

[33] *Id.*

[34] *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890–91 (9th Cir. 1994).

**A.      Stafford cannot establish a prima facie case of racial discrimination.**

To prevent summary adjudication of a racial-discrimination claim, a plaintiff must first show that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse-employment action, and (4) similarly situated individuals of other races were treated more favorably.[35]  The amount of proof needed to establish these elements on summary judgment is minimal, below even a preponderance of the evidence.[36]  Nor are the requirements "rigid, mechanized, or ritualistic;" they can vary depending on the context and "differ from case to case."[37]  Mandalay Bay concedes that Stafford belongs to a protected class and that he suffered an adverse-employment action.[38]  But it contests the remaining prongs: Stafford's qualifications and whether similarly situated individuals were treated better.[39]

*1.      Qualification for the position can be shown through work history.*

Stafford can establish that he was qualified for his lifeguard position by showing a satisfactory work history.[40]  That showing must rise above a subjective personal self-assessment.[41]  For example, in *Aragon v. Republic Silver State Disposal Inc.*, Republic Silver State Disposal terminated Mark Aragon, a white male, from his job carrying trash bins to waiting

---

[35] *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002).

[36] *Id.* at 659.

[37] *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 311 (2025) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)).

[38] ECF No. 51 at 11.

[39] *Id.* at 11–13.

[40] *See Aragon*, 292 F.3d at 659–60.

[41] *Id.* at 660; *Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1003 (9th Cir. 2019) ("An employee's self-assessment of his performance, though relevant, is not enough on its own to raise a genuine issue of material fact.").

garbage trucks.[42]  Aragon alleged that his non-white supervisor terminated him based on his race.[43]  When his employer moved for summary judgment, Aragon provided evidence that he had "no formal write-ups for poor performance or disciplinary notices against him," "his performance was equal to his coworkers and that his trucks brought in an average amount of garbage by weight," he had documents explaining any absence, and his supervisor made statements about him being rehired.[44]  The court found that these facts were sufficient to show that Aragon was qualified for his position.[45]

> 2.    *More favorable treatment of similarly situated coworkers requires an evidentiary showing of different treatment under the same circumstances.*

Likewise, Stafford may support the other prong—that similarly situated individuals were treated more favorably—by showing that a coworker of another race in the same position and accused of the same or similar conduct was less-harshly punished.[46]  For example, in the Ninth Circuit's opinion in *Ballou v. McElvain*, female sergeant Julie Ballou was passed over several times for a promotion, including when she was at the top of the promotion list.[47]  She sued the police chief for sex discrimination.[48]  The chief's stated reason for not promoting Ballou was that she violated a policy by not writing a report when she should have,[49] but one of the male

---

[42] *Aragon*, 292 F.3d at 657.

[43] *Id.* at 657–58.

[44] *Id.* at 659–60.

[45] *Id.* at 660.

[46] *See Vasquez*, 349 F.3d at 641.

[47] *Ballou v. McElvain*, 29 F.4th 413, 418 (9th Cir. 2022).

[48] *Id.*

[49] *Id.* at 419.

sergeants promoted over her had been investigated for violating the very same policy.[50] Applying the *McDonnell Douglas* framework, the court found that Ballou had met her initial "minimal" burden of showing that similarly situated individuals outside her protected class were treated more favorably.[51]

But coworkers are typically not similarly situated if they are not accused of the same or similar conduct.  For comparison, in *Vasquez v. County of Los Angeles*, a supervisor directed Francisco Vasquez, a Hispanic deputy-probation officer, not to play football with the youth at a youth-detention center after he asked to do so.[52]  But he disobeyed and played football with the youth and another non-Hispanic probation officer who was unaware of the supervisor's order.[53] When Vasquez was reprimanded for disobeying the order—but the other officer was not similarly punished—Vasquez sued for racial discrimination.[54]  He claimed that similarly situated individuals outside his protected class were treated more favorably because the other officer was not similarly punished.[55]  The Ninth Circuit rejected that argument, finding that the officers were not similarly situated because the other officer was not accused of the same conduct—knowingly disobeying an order.[56]

---

[50] *Id.* at 422.

[51] *Id.*

[52] *Vasquez*, 349 F.3d at 638–39.

[53] *Id.* at 638–39.

[54] *See id.* at 639, 641.

[55] *See id.*

[56] *Id.* at 641.

3.    *Stafford has offered no showing to support either prong.*

Stafford has not satisfied his burden of showing either his qualifications or that similarly situated individuals were treated more favorably.  He has attested to only four facts: that he is unrepresented, he submitted a brief, he filed an evidentiary objection, and he recommends that I investigate whether any surveillance footage exists.[57]  Even liberally construing his declaration as incorporating his brief, the facts included in it fall short of establishing that he was qualified for the position or that similarly situated individuals of other races were treated more favorably.  Unlike Aragon, Stafford does not provide or describe any specific facts showing that he was performing well in his job overall; he only described the incident in question.[58]  And Stafford's sole argument in his brief that similarly situated coworkers were treated better is that he was interviewed before the other lifeguards and his supervisor, which according to him, gave them time to conspire.[59]  But he does not offer, as he must under cases like *Vasquez* and *Ballou*, any evidence showing that Mandalay Bay accused a lifeguard of another race of similar conduct but treated that lifeguard more favorably.  Nor could he point to any similar incidents during his deposition.[60]  Stafford has thus not met his initial burden of establishing his prima facie case.

**B.    Stafford has not offered specific and substantial evidence of pretext to rebut Mandalay Bay's legitimate, nondiscriminatory reason for his termination.**

Even if Stafford could establish a prima facie case, Mandalay Bay has offered a legitimate, nondiscriminatory reason for his termination—that he accosted a guest in violation of

---

[57] ECF No. 58 at 5.

[58] *Id.* at 2.

[59] *See id.*

[60] ECF No. 51-1 at 84–87 (107:7–110:25).

its rules.[61]  So the burden shifts back to Stafford to show that Mandalay Bay's stated reason is pretextual.[62]  Stafford can satisfy this burden with direct evidence that shows that discrimination more likely motivated the employer or with indirect evidence that the employer's explanation is unworthy of credence.[63]  Direct evidence consists of evidence that shows discriminatory animus without any inference or presumption.[64]  Indirect evidence must be specific and substantial evidence challenging the credibility of the employer's motives.[65]

The crux of Stafford's argument is that his supervisor had a racial bias against him and that she organized the other lifeguards to lie about him and the incident.[66]  He also theorizes that the human-resource employees were biased, too, and they decided to terminate him once they learned that he is Black.[67]  Mandalay Bay calls these arguments "speculation" and "conjecture."[68]

The Ninth Circuit's opinion in *Villiarimo v. Aloha Island Air, Inc.* forecloses both of Stafford's arguments.[69]  Reloynne Villiarimo and her subordinate worked as ground personnel for Aloha Island Air.[70]  Villiarimo claimed that when she left her post at the front of the aircraft

---

[61] *See, e.g.*, *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1118 (9th Cir. 2011) (finding plaintiff's "multiple violations of company policy could constitute a legitimate reason for terminating her employment"); ECF No. 51-1 at 10, 11, 35.

[62] *Vasquez*, 349 F.3d at 640.

[63] *Id.*

[64] *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017).

[65] *Vasquez*, 349 F.3d at 641.

[66] ECF No. 51-1 at 80 (103:9–23); ECF No. 58 at 2–3.

[67] ECF No. 51-1 at 80–82 (103:9–105:7).

[68] ECF No. 51 at 14.

[69] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002).

[70] *Id.* at 1058.

to help her subordinate, the two of them accidentally damaged and disabled one of Aloha's planes.[71]  Three witnesses challenged her explanation, stating that she had never left her post and that she lied about it.[72]  Aloha terminated Villiarimo, and its stated reasons were that she lied during the investigation and likely committed procedural violations.[73]

Villiarimo sued Aloha for sex discrimination.[74]  She theorized that Aloha's stated reason for terminating her—that she lied—was pretextual because Aloha based it on the statements of three witnesses who, she asserted, were the real liars.[75]  The court found that Villiarimo didn't satisfy her burden to show pretext.[76]  It noted that judging whether Aloha's proffered justifications were actually false was irrelevant for discrimination claims.[77]  Rather, courts "only require that an employer honestly believed its reason for its actions," even if its reason is ultimately "foolish or trivial or even baseless."[78]  Because Villiarimo presented no evidence that Aloha's belief was insincere, the Ninth Circuit held that granting summary judgment for the company was proper.[79]

Like in *Villiarimo*, Stafford's argument boils down to the allegation that all the witnesses in the investigation into his conduct lied.  But even if that were true, Stafford has offered nothing to show that the employees who decided to terminate him—Mandalay Bay's investigation team,

---

[71] *Id.*

[72] *See id.* at 1058–59.

[73] *Id.* at 1059.

[74] *Id.*

[75] *Id.* at 1063.

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

Kathi Konkel and Wyatt Dent—did not honestly believe that Stafford committed the violations.[80]  And no facts suggest that they terminated him because of his race and not because of what they uncovered during the investigation.  In his deposition, Stafford offered his opinion that they decided to fire him when they learned of his race,[81] but a bald accusation of bias is not "specific and substantial" evidence of pretext under the law.[82]  So Stafford cannot prove that Mandalay Bay's explanation is pretextual.[83]

## Conclusion

Because the record fails to support Stafford's prima facie case of racial discrimination or rebut the defense's reason for termination, IT IS ORDERED that Mandalay Bay, LLC's motion

---

[80] Nor is there any evidence suggesting that Stafford's supervisor organized all the witnesses to lie about him, that she did so out of racial animus, or that the investigation was a mere "rubber stamp" that could justify a cat's paw theory of liability.  *Cf. Lui v. DeJoy*, 129 F.4th 770, 779–80 (9th Cir. 2025) (finding that a superior's decision to terminate an employee was improperly influenced by a biased subordinate when the supervisor heard no live testimony, stated that she never met any of the employees who submitted the complaints, and heard that the complaints may have been racially motivated).

[81] ECF No. 51-1 at 80–82 (103:9–105:7).

[82] *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive" and creates "no genuine issue of material fact."); *Villiarimo*, 281 F.3d at 1061 (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477 (9th Cir. 1996)) ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony").

[83] Mandalay Bay also argues that Stafford cannot be rehired under the after-acquired-evidence doctrine and that several categories of damages in his prayer for relief cannot be granted.  ECF No. 51 at 14–19.  Because I find that Stafford has not put forward sufficient evidence to survive summary judgment on his prima facie case, I do not reach these arguments.

for summary judgment **[ECF No. 51] is GRANTED**.  The Clerk of Court is directed to **ENTER FINAL JUDGMENT** in favor of the defendant and against the plaintiff and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
September 24, 2025